UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MARIANITA RIVERA GARCIA,

              Plaintiff,

    -v-

ANDREW SAUL,
Commissioner of Social Security,[1]

             Defendant.
_____

18-CV-928-MJR
DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 17)

Plaintiff Marianita Rivera Garcia ("Garcia") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Garcia's motion (Dkt. No. 8) is granted, the Commissioner's motion (Dkt. No. 15) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND[2]

Garcia filed an application for DIB on October 21, 2014, alleging disability since June 1, 2010 due to mental health impairments and carpal tunnel syndrome. (See Tr. 21, 246)[3] Garcia also protectively filed an application for SSI that same day. (Tr. 21) Garcia's disability benefits application was initially denied on March 31, 2015. (Tr. 41) She timely filed a written request for a hearing. (Tr. 65) A hearing was held before Administrative Law Judge Eric Glazer ("the ALJ") on May 2, 2017 and September 7, 2017.[4] (Tr. 21, 799-845) Garcia and her husband testified during the May 2, 2017 hearing. (Tr. 799-813) At the September 7, 2017 hearing, the ALJ received testimony from Garcia and Vocational Expert Christine DiTrinco (the "VE"). (Tr. 814-40) On September 27, 2017, the ALJ issued a decision finding that Garcia is not disabled under the Act. (Tr. 21-37) The Appeals Council denied Garcia's request for review of the ALJ's determination on June 27, 2018, and this action followed. (Tr. 7, 65)

Born on May 24, 1971, Garcia was forty-five years old on the date of the first hearing. (Tr. 37, 214) She completed the sixth grade while living in Puerto Rico and has past relevant work as a "child monitor." (Tr. 35, 247) Garcia cannot read or write in English. (Tr. 807)

## DISCUSSION

I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are

---

[2] The Court assumes the parties' familiarity with the case.
[3] References to "Tr." are to the administrative record in this case.
[4] Garcia required the assistance of a Spanish-language interpreter during both hearings.

2

"supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

## II. *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has

a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work,

then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

### III. *The ALJ's Decision*

The ALJ first found that Garcia met the insured status requirements of the Act through December 31, 2013. (Tr. 23) The ALJ then followed the required five-step analysis for evaluating Garcia's claim. Under step one, the ALJ found that Garcia has not engaged in substantial gainful activity since October 21, 2013. (*Id.*) At step two, the ALJ found that Garcia has the severe impairment of "major depressive disorder, recurrent, in partial remission."[5] (Tr. 24) At step three, the ALJ determined that Garcia does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 24-25) Before proceeding to step four, the ALJ assessed Garcia's RFC as follows:

---

[5] At step two, the ALJ also noted that Garcia further alleged disability based on bilateral carpal tunnel syndrome, chronic back pain, headaches, chronic urinary tract infections, abdominal pain, fatty liver, knee pain, gastroesophageal reflux disease, and obstructive sleep apnea. (Tr. 24) The ALJ found that these impairments did not cause Garcia any work related impairments, nor did they last the required 12-month durational period. (Tr. 24) Although the ALJ did not consider these impairments to be severe under his step two analysis, he considered the effect of these impairments on Garcia's ability to work as required by the Commissioner's Regulations. *See* 20 C.F.R. §404.1520(e); (Tr. 23 ("In making this [RFC] finding, I must consider all of the claimant's impairments, including impairments that are not severe."))

6

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) except she can frequently reach overhead, climb stairs and ramps, stoop, kneel, and crouch. She can occasionally climb ladders, ropes, or scaffolds and can occasionally crawl. She can occasionally be exposed to unprotected heights and moving mechanical parts. She can never operate a motor vehicle. She must avoid concentrated exposure to dust, odors, fumes and pulmonary irritants. She cannot be exposed to extreme cold or extreme heat. The claimant's English-language proficiency is limited to brief workplace exchanges, adequate for comprehension of work-related directives and accomplishment of assigned tasks. The claimant is limited to performing simple, routine, and repetitive tasks and simple work-related decisions. She can have no more than incidental (1/6 of shift) interaction with co-workers and the public as necessary to perform assigned work. Visible and audible contact is permitted at all other times, with no interaction required. The claimant's time off task can be accommodated with normal breaks. The claimant would be absent once per month at two-hour intervals for prearranged behavioral health appointments, including vicinity travel to and from the worksite.

(Tr. 25-26)

Proceeding to step four, the ALJ concluded that Garcia is not capable of performing her past relevant work. (Tr. 35) The ALJ noted that Garcia was defined as a "younger individual" under the Act on the alleged disability onset date, that she is unable to communicate in English, and that she "is considered in the same way as an individual who is illiterate in English." (*Id.*) The ALJ went on to find that based upon Garcia's age, education, work experience, RFC, and the testimony of the VE, there are jobs which exist in significant numbers in the national economy which Garcia can perform, such as garment sorter, food service worker, and assembler-small products. (Tr. 35-36) Thus, the ALJ ultimately concluded that Garcia has not been under a disability, as defined by the Act, from October 31, 2013 through the date of the decision. (Tr. 24)


IV.   *Garcia's Challenges*

Garcia argues that neither the mental nor physical portions of the RFC were supported by substantial evidence because the ALJ used his own lay interpretation of raw medical data and failed to obtain medical opinion evidence. (*See* Dkt. No. 8-1 (Garcia's Memo. of Law)) For the reasons stated below, the Court agrees and finds that remand is necessary.

An RFC assessment "is the most [a claimant] can do despite [her] limitations." 20 C.F.R. §404.1545. When assessing a claimant's RFC, "[a]n ALJ must rely on the medical findings contained within the record and cannot make his own diagnosis without substantial medical evidence to support his opinion." *Goldthrite v. Astrue*, 535 F. Supp 2d 329, 339 (WDNY 2008). Thus, an ALJ's determination of an RFC without a medical provider's assessment is not supported by substantial evidence. *Wilson v. Colvin*, 13-CV-6286, 2015 U.S. Dist. LEXIS 27804 (WDNY Mar 6, 2015). Where the record is "devoid of any opinions from treating or examining medical sources regarding [the] [p]laintiff's functional or work capacity limitations...the ALJ [is] obligated to develop the record and obtain RFC assessments from [the] [p]laintiff's treating and/or examining physicians." *Salone v. Berryhill*, 6:16-CV-06491, 2018 U.S. Dist. LEXIS 205545 (WDNY Dec. 5, 2018); *quoting Jarmyn v. Colvin*, 13-CV-5093, 2015 U.S. Dist. LEXIS 36389 (EDNY Mar. 23, 2015). "Failure to do so necessitates remand." *Id.*

Candance Larson, L.M.H.C, completed a Mental Residual Functional Capacity Questionnaire in December of 2014. (Tr. 284-89) At that time, Larson had been treating Garcia since April of 2012. (Tr. 272) Larson opined that Garcia was seriously limited in maintaining attention for two hour segments; working in coordination with or in proximity

to others without being unduly distracted; completing a normal workday and workweek without interruptions from psychologically based symptoms; and dealing with normal work stress. (Tr. 286) Larson also opined that Garcia was seriously limited in understanding, remembering and carrying out detailed instructions; setting realistic goals or making plans independently of others; and interacting appropriately with the public. (Tr. 287) She opined that Garcia's mental impairments would cause her to be absent from work more than four days per month, and that Garcia was incapable of full-time competitive work on a sustained basis. (Tr. 288-89) The ALJ gave little weight to Larson's opinion because it was inconsistent with other medical evidence in the record. (Tr. 34) The ALJ also noted that Larson is not a physician and is not considered an acceptable medical source under the Commissioner's Regulations. (*Id.*)

Larson provided the only opinion in the record as to how Garcia's mental impairments affect her ability to function in the workplace. Further, it is clear that the ALJ rejected the vast majority of Larson's opinion. Larson opined that Garcia's mental impairments would result in four or more absences a month, prevent her from working in proximity with others and interfere with her ability to complete a normal workday or workweek. The VE testified that these limitations would preclude employment. (Tr. 836-37) Larson's conclusions that Garcia is seriously limited in dealing with normal workday stress and interacting with the public are also incompatible with the RFC. Even if the ALJ was justified in rejecting Larson's opinion, doing so left a gap in the record as to the functional effects of Garcia's mental disorder. Instead of further developing the record by requesting an assessment of Garcia's mental capabilities and limitations, the ALJ relied on his own interpretation of Garcia's medical records to fashion the RFC. This error

9

resulted in an RFC that is not supported by substantial evidence. *See Smith v. Saul*, 17-CV-6641, 2019 U.S. Dist. LEXIS 102689 (WDNY June 19, 2019) ("Decisions in this district have consistently held that an ALJ's RFC determination without a medical opinion backing it is, in most instances, not an RFC supported by substantial evidence."); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (finding that the ALJ, as a lay person, was not in a position to interpret the medical evidence); *Green v. Berryhill*, 17-CV-1229, 2019 WL 1252963, at *3 (WDNY May 31, 2019) (remanding where ALJ rejected all medical opinions leaving a gap in the record and relying on bare medical findings to determine RFC).

In rare circumstances, such as when the medical evidence shows minor impairments, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." *House v. Astrue*, 5:11-CV-915, 2013 U.S. Dist. LEXIS 13695 (NDNY Feb. 1, 2013). Those circumstances do not exist here. Instead, the record reflects that Garcia had significant mental impairments which required regular treatment and affected her daily functioning. Garcia's medical records reveal that she suffered from generalized anxiety disorder, major depressive disorder, and frequent hallucinations. (Tr. 270, 276, 282, 725) She required frequent therapy and prescription medication changes. (*Id.*) Garcia's husband testified that Garcia talked to herself, experienced visual hallucinations, and never left home without him. (Tr. 808-09) He also testified that on some days Garcia could not get out of bed, and that she often got angry with people. (*Id.*) Garcia testified that she saw a counselor or psychiatrist once or twice a month. (Tr. 825) The RFC outlines Garcia's mental limitations in a number of categories and provides very specific parameters as to Garcia's capabilities. It is unclear

how the ALJ made these determinations without a medical opinion to rely on. For example, it is unclear how the ALJ was able to determine, from the bare medical data in the record, that Garcia is capable of: (1) performing simple, routine, and repetitive tasks; (2) making simple work-related decisions; and (3) interacting with co-workers and the public for one-sixth of her work day. *See Bailey v. Berryhill*, 1:17-CV-6013, 2017 U.S. Dist. LEXIS 192225, *9-10 (WDNY Nov. 20, 2017) (where the record lacked any medical opinion as to how plaintiff's anxiety disorder affected her ability to work, it was unclear as to how the ALJ, who was not a medical professional, was able to conclude that plaintiff could understand, remember and carry out simple instructions and tasks, frequently interact with co-workers, and maintain focus and concentration for up to two hours at a time); *Heckman v. Comm'r of Soc. Sec.*, 18-CV-6032, 2019 U.S. Dist. LEXIS 58447, *8 (WDNY April 4, 2019) ("A very specific RFC assessment—such as the specific amount of time a claimant can spend on certain activities—must be based on evidence in the record, not on the ALJ's own surmise.")

Importantly, an RFC which goes to mental impairments must be sufficiently specific and supported by detailed evidence. *See Martin v. Colvin*, 1:15-CV-01067, 2017 U.S. Dist. LEXIS 11067, *8-9 (WDNY Jan. 26, 2017) (an ALJ's duty to develop the record is heightened where mental conditions are present). This heightened duty "derives from the fact that a claimant's mental illness may greatly impede an evaluator's assessment of a claimant's ability to function in the workplace, thus necessitating a more thorough review." *Piscope v. Colvin*, 201 F. Supp. 3d 456 (SDNY 2016). The Court concludes that the instant case lacks such a thorough review.

11

On remand, the Commissioner shall further develop the record by either (1) requesting an opinion regarding Garcia's mental limitations and functional capabilities from one of Garcia's treatment providers or (2) requesting a consultative examination regarding Garcia's mental functioning.

Similarly, the ALJ improperly relied on his own lay opinion to fashion portions of the RFC addressing Garcia's physical capabilities. The medical evidence in the record reveals that Garcia frequently received treatment for joint pain, back pain, carpal tunnel syndrome, migraine headaches, and abdominal pain. (Tr. 276, 278, 548, 549) She had knee surgery in 2013 and carpal tunnel surgery in 2014. (*Id.*) However, she continued to experience wrist pain following the carpal tunnel surgery. (Tr. 529) Garcia was regularly prescribed numerous medications to treat her physical and mental ailments, including prescription pain medication. (Tr. 322, 372, 378, 478, 496, 582, 657, 703, 705) Examinations revealed discomfort and tenderness in Garcia's paraspinals as well as neck tenderness. (Tr. 380, 683, 686, 692) A cervical electromyography demonstrated chronic cervical radiculopathy at C6 on her right side. (Tr. 628) Garcia's husband testified that he "does everything around the house" including cleaning, shopping and laundry, as well as taking Garcia to all of her medical appointments. (Tr. 805) He testified that Garcia has trouble walking or standing in one place because of back pain and has difficulty lifting things because of issues with her hands. (Tr. 806-07)

Despite the foregoing evidence, the record is devoid of any opinion by a treating or examining doctor as to how Garcia's physical impairments affect her ability to work. The ALJ found Garcia's physical impairments to be non-severe and concluded that they "did not cause any work-related limitations." (Tr. 25) Paradoxically, the ALJ proceeded

to assign significant physical restrictions to the RFC, including limiting Garcia to light work and imposing postural limitations. Thus, it appears to the Court that the ALJ accepted that Garcia did in fact have physical limitations which affected her ability to work, but fashioned an RFC without the benefit of a function-by-function assessment of Garcia's abilities by a medical provider. This was error and requires remand. [6] See Sherry v. Berryhill, 1:17-CV-01102, 2019 WL 441597, *5 (WDNY Feb. 5, 2019) ("The Court cannot conclude that there was substantial evidence to support the ALJ's RFC determination that plaintiff was capable of light work with restrictions and is left without a clear indication of how the ALJ reached the RFC determination without resorting to impermissible interpretation of raw medical data."); Guillen v. Berryhill, 697 F. App'x 107, 108-09 (2d Cir. 2017) (remanding where the ALJ failed to obtain a medical source statement from plaintiff's treating physician and plaintiff's medical records did not "shed any light on [plaintiff's] residual functional capacity."); Salone, 2018 U.S. Dist. LEXIS 205545, *9 (in the absence of a function-by-function assessment, plaintiff's treatment notes alone cannot constitute substantial evidence in support of the ALJ's conclusion).

On remand, the Commissioner shall also further develop the record by either (1) requesting an assessment of Garcia' physical limitations and capabilities by a treating physician; or (2) ordering a consultative examination as to Garcia's physical functioning.[7]

---

[6] The Commissioner argues that remand is unnecessary because "although plaintiff's physical limitations were non-severe, the ALJ gave the plaintiff the benefit of the doubt by assigning significant RFC limitations." (See Dkt. No. 15 (Commissioner's Memo. of Law)) This statement is illogical and contradictory. Non-severe limitations do not require significant RFC restrictions. The Court finds instead that the ALJ improperly relied on his own lay opinion in fashioning the physical requirements of the RFC.
[7] Garcia also argues that remand is warranted because the ALJ erroneously rejected Larson's "other source" opinion. In light of the Court decision to remand the case for the reasons stated herein, including further development of the record as to plaintiff's mental functioning, the Court does not address this argument.

## CONCLUSION

For the foregoing reasons, Garcia's motion for judgment on the pleadings (Dkt. No. 8) is granted, the Commissioner's motion for judgment on the pleadings (Dkt. No. 15) is denied, and this case is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   June 2, 2020
         Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge